The defendant did not attempt to excuse his publication by evidence that he made it from a different motive than the malicious one of defaming the prosecutor, imputed to him in the indictment. He insisted simply that he was justified by the truth of his words. The single question, then, is whether a person with a view to injure the character of another can publish of him, in writing or print, as a general rumor, that he has been guilty of a felony or some infamous offense, and justify the publication by the evidence of the rumor and without any proof of the guilt of the person? The very stating of such *Page 135 
a proposition in the affirmative shocks the understanding and the sense of what is due to innocence.
It has long been settled in regard to a private action for such a publication that the action would lie, "although that in truth the party might hear" the scandalous words from others. The Earl of Northampton'scase, 12 Rep., 134. That case was followed by Hampton v. Wilson,15 N.C. 468. Lord Coke assigns as a reason for the rule that a person of no estimation might have spoken the words, "and if it should be lawful for a man of credit to report them generally, that would give greater color and probability that they were true, in respect of the credit of the reporter." The remark is founded in good sense and a knowledge of the heart. The publication of such an imputation, though as a general rumor, can only be intended to obtain, in some degree, credence in the truth of the charge. Therefore, the reporter ought to be required to establish its truth, or show some other motive for circulating (185) it than that of defamation merely.
The same reasons apply with equal force to an indictment, as to an action for a libel. The publication imparts to the rumor the credit of the reporter, so as to give that color of probability to the accusation which his name can procure for it; and it tends as directly to provoke a breach of the peace, as if he had affirmed the truth of the charge. As far as the authority of the publisher was intended to sanction the report or give credit to it, to that extent the publication of the rumor is substantially the assertion of its truth. It certainly cannot be understood that he published it as a false report. Then he must have meant the world to believe that there was some ground of truth for the rumor; and, in order that it might be the more readily believed, he gave it the sanction of his name. Such conduct is not only a grievous wrong to the good name of an innocent man, but not less seriously endangers the public peace. The act of 1803 has no effect on this question. It merely allows the truth of a charge to justify it, upon an indictment for a libel, and, in that respect, puts an indictment and a civil action on the same footing, which was not so at common law. The Legislature did not mean that a person should be liable for a libel, at the private suit of the citizen, because the defendant could not prove the truth of a report published by him, and yet that he should not, for the same reason, be liable on an indictment for the very same publication. In fine, it could not have been intended that a person, from ill will to another, might with impunity circulate general reports of scandalous falsehoods respecting the other. Such a rule would give free scope to the worst passions and continually embroil society.
PER CURIAM. No error.
Cited: Johnston v. Lance, post, 456. *Page 136 
(186)